# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

FEBRUARY TERM, 1885.

47   1
48e 240

---

SARAH H. RUSLING v. WILLIAM H. RUSLING ET AL., EX-
ECUTORS OF GERSHOM RUSLING, DECEASED.

1. A suit at law will not lie on a promise of a husband to repay to his
   wife moneys received by him for her during coverture.
2. But such suit will lie against the executors of the husband on a prom-
   ise made by them officially to pay the moneys so received by the hus-
   band.

---

Suit against executors by widow of testator. The first count
of the declaration sets forth that plaintiff, during coverture, on
May 1st, 1863, received $1000 as a gift from her uncle, and that
her husband, the testator, received from her such moneys to in-
vest " for her sole use and benefit," and that he promised so
to invest the same for her for that purpose; that said hus-
band made his will, which contained this clause, to wit: " I
give and bequeath to my beloved wife, Sarah H. Rusling, the
sum of two thousand dollars ($2000), and I direct that the
same be paid to her, with interest from my death, in one year

Vol. XVIII.        1

thereafter; I also give to my said wife the interest of the sum
of four thousand dollars ($4000), to be paid to her annually,
from the time of my death, during the term of her natural
life, if she shall so long remain my widow; and I hereby
direct my executors, as soon as practicable, to invest on bond
and mortgage the said sum of four thousand dollars ($4000)
from my estate, and to pay the interest thereof to my said
wife as aforesaid; I do further will and direct that all the
household goods, silverware and personal property of every
description, which my said wife had of her own property at
the time of her marriage with me, and all which she may
have since acquired, with her own property, shall be taken
and held by her as her own separate property; and it is my
will and I do hereby direct that the said bequests in favor
of my said wife shall be in lieu and in bar of her right of
dower, or any other claim that she might have against my
estate;" that said testator in his lifetime promised to pay
the said money to plaintiff when requested, and that after
the death of the testator "the defendants, as executors as afore-
said, in consideration thereof," on, &c., undertook and prom-
ised to pay the plaintiff the said moneys on request.

The second count contained an averment, in the usual form,
of a promise by the defendants to pay a certain sum found
to be due the plaintiff on an account stated between her and
the defendants as executors.

Argued at November Term, 1884, before BEASLEY, CHIEF
JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *Isaac R. Wilson.*

For the defendants, *James F. Rusling.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is a suit by a widow
against the executors of her late husband. From the argu-
ment as presented in the brief of the counsel of the defendants,

the plea, which is one in denial of the jurisdiction of the court, was intended to raise the question whether moneys having been received for her by the husband during marriage can be recovered in an action at law against his personal representatives. The first count of the declaration presents the facts of the case, but it is inartistically framed, and as its statements are not altogether congruous, and as it contains a promise to pay the moneys in question, made by the testator, and an independent one made by his executors, as such, after his decease, it becomes necessary to consider this case, so laid by the plaintiff, in a two-fold aspect.

First, then, with regard to the promise averred to have been made by the deceased in his lifetime. The count shows that during the marriage certain moneys were given by a relative to the plaintiff and that she permitted her husband to receive and to retain such moneys on his promise to invest them for her and to pay them to her when requested.

It is entirely clear that an action for the breach of such an agreement as this would not have lain in a court of law by the wife against her husband. In this respect the common law rule has not been relaxed, for, by the last clause of section 14 (*Rev.*, *p.* 639,) of the act relating to the property of married women, it is declared that nothing therein contained " shall enable husband or wife to contract with or to sue each other except as heretofore." By this enactment the matrimonial *status* was not in anywise modified so far forth as it is of present concern.

To this extent no controversy has been urged, but the counsel for the plaintiff insists, that inasmuch as by force of the act just referred to, the property in dispute was vested in the wife, after the death of the husband the law would imply a promise on the part of these executors to hand her over these moneys on demand.

The inquiry thus started is one that relates not to the right of the plaintiff to the fund in question, but to the appropriateness of the forum in which she has sought her remedy. Is the claim a legal or an equitable one? That it belongs to the

Rusling v. Rusling's Executors.

latter of these two classes seems to me to have been per-emptorily settled in the case of *Horner* v. *Horner's Ex'rs*, 4 *Vroom* 387. There the facts were these, viz. : the suit was in the Circuit Court, and was by a wife against the executors of her husband to recover a distributive share of the estate of her father which, during marriage, his administrator had paid to her husband. It appeared such payment had been made in two instalments, and that part of the money thus received the husband had used for his own purposes, another part he had put out at interest on a bond and mortgage payable to himself, and that the residue of the fund existed, at the time of his death, in the form of a check, which he had taken from the administrator, payable to his own order. As the law regulating the conjugal relationship then existed in this state, it was provided that all goods, chattels and choses in action owned by the wife at the time of her marriage, or which came to her by gift, bequest or inheritance, at any time during the covert ure, and *which remained in the hands of the husband at the time of his death*, should be delivered by his executor or administrator to the wife on demand. It is also to be remem-bered that at the time when this distributive share came into the hands of the husband the statutory provision giving to the *feme covert* a separate estate in such property was in force.

Under the prevalence of these laws, as applied to the facts stated, there were two questions that were placed before the Court of Errors for decision. The first was whether the check which the husband had received from the adminis-trator of the father of the wife, in part payment of her dis-tributive share of the paternal estate, was a chose in action of the wife that remained in the hands of the husband at the time of his death. This was obviously a question of some nicety, for it could be urged with much force in favor of the claim of the wife that the check was her chose in action, inas-much as it had been given to the husband for the purpose of transferring to her the moneys due to her as a portion of her separate estate, while, on the other hand, such view was sus-ceptible of the criticism that as the check had been taken by

the husband in form payable to himself, and as it so continue ! at the time of his death, it could not then, with propriety, b said to be the chose in action of the wife, for although : debt evidenced by the instrument was undoubtedly the w; ' in equity, still the check did not exist as a chose in actio the wife, as she could not bring suit upon it and it could enforced only by the representative of the husband in a cou.. of law. The discrimination to be made was dependent on somewhat subtle distinctions, and consequently there was not entire unity of judicial opinion on the subject, but the fact that the point was deemed of essential importance is of conclusive significance in the present inquiry, for if, as is now contended, an action at law can be brought against these defendants to recover moneys alleged to have been obtained by the deceased as the husband or agent of the plaintiff, then it is obvious that the matter thus elaborately discussed and decided was of no account to the court in disposing of the case. If, from the mere fact that the husband had died with the moneys of his wife in his hands, the wife could claim them by her suit against his representatives, it was manifestly of no importance whether the check in controversy was the chose in action of the husband or was that of the wife. And indeed, on the other branch of the case, the court did decide, in very fact, that such a suit was not sustainable. As already stated, part of the wife's moneys had been invested by the husband in a bond and mortgage taken in his own name, and although in all the opinions read in the Court of Errors it was admitted that under the circumstances then present such moneys, being by force of the statute a part of the separate estate of the wife, were recoverable by her in a court of equity, at the same time it was declared that it would be radically incongruous with the judicial system of this state to permit such a controversy to be waged in a court of common law. In order to show upon how broad a principle the doctrine was founded in the court of last resort, it will suffice to cite the following passages from the carefully prepared opinion of Chancellor Zabriskie, viz.: "During the life of both parties no action could be brought at law by the

wife against the husband for her estate received by him, for at law no action can be maintained by either against the other; and although at first inclined to hold the contrary, I have come to the conclusion that no action at law can be maintained by the wife against her husband's representatives for money belonging to her received by him in his lifetime, as so much money had and received for her use. The husband in his life, and his representative after his death, can be made to account for her separate estate received by him, not given to him by her. But this account has always been had in equity. No case is found where any action at law was ever brought, although for many years married women have had, by settlement or gift, estates to their separate use, as to which their rights were the same as their rights now are to their separate estates under the Married Women's act. The mere fact of the receipt of her money does not make his representatives liable to account for it to her. That is controlled by the circumstances, which cannot be so well considered at law as in courts of equity." And this view of the late Chancellor is sustained in all respects and is very strongly corroborated by the opinion of Mr. Justice Depue, read in the same case. The rule, therefore, is settled in this state that neither of the parties to a marriage can sue, at law, the representative of the one first dying, for moneys received in his or her behalf during marriage. There may have been cases arising in practice which, upon a superficial consideration, might have the appearance of having been an intentional infringement of this doctrine. Thus, at the Circuit, the administrator of a husband was permitted to recover from the wife certain moneys which the husband had deposited with her for family expenses some time before his decease, and which the wife refused to pay to the representative. But the theory upon which such a recovery was thought to be justified was this: that by the delivery of the money to the wife, under the circumstances, the husband had not parted with its legal possession; that it was in the custody of the wife in the same way that an article of household furniture would have been if especially confided to her care, and that

the possession in law remaining in the husband to the time of his death, such right passed to his representative, and that thereby the refusal of the wife to deliver up the moneys in question was a conversion of them as against the administrator.    It is obvious that it is not necessary to decide whether this theory of the legal aspect of the case referred to was right or wrong.    All that at present concerns us with respect to it is to indicate that neither it nor similar applications of legal rules were deemed nor meant to be, in the slightest degree, departures from the doctrine above stated as promulged by the Court of Errors.

And this doctrine is, in my opinion, exactly applicable to the present case, in the aspect in which it is now being considered, for the express promise laid in this count, and alleged to have been made by the deceased to his wife, has no legal value whatever.    If an agreement, binding in a court of law, could be made between a husband and his wife, a promise to pay money justly due and recoverable in equity would, whenever such conditions existed, be necessarily raised by implication upon the ordinary legal grounds.

Nor does it seem to me that the testamentary provision quoted in this count of this declaration can be of any avail in support of the action.    The money claimed is not within the enumeration of the articles of property thereby bequeathed, for it is neither personal property which the wife had at the time of her marriage, nor is it an acquisition since made by her with her own property.    This clause of the will fails to support the suit.

But I see no reason why the subsequent promise, which the count alleges proceeded from the defendants themselves, acting in their representative capacity, should not have that effect. For the present purpose we must assume the facts stated in the count to be true, and the juncture is therefore presented of money received by a husband in right of his wife, and of a promise on his part to pay it to her on demand and a nonfulfilment of such promise to the time of his death.    Now it is clear, such being the unqualified state of the case, that the

wife, in a court of equity, would be entitled to recover this fund. This is the doctrine on which the case of *Vreeland* v. *Vreeland's Adm'r* was settled by Chancellor Green, the case being reported in 1 *C. E. Green* 512. There the controversy arose touching a credit claimed by the administrator for certain money paid to the widow as so much money received during marriage by the deceased husband in right of his wife, the same having become due to her from the estate of her father. It was held that such funds, under the circumstances stated, and in the absence of other controlling facts, were the wife's separate estate, and that the administrator could lawfully pay such moneys and claim credit for them in his settlement in the Orphans' Court. It would seem, therefore, necessarily to follow that a promise to pay such a claim, the consideration being the equitable right of the widow to the property, must be enforceable at law. By such a promise, what before was an equitable obligation is converted into a legal obligation. If it be said that the legalization of such a promise on the part of the personal representatives might be of ill consequence to the creditors of the deceased, inasmuch, as was intimated in the case above referred to, of Horner *v.* Horner's Ex'rs, in some supposable instances the wife might have so acquiesced in the possession and use of her money by her husband as to give his creditors an equitable lien upon it, and that if she can prosecute her suit in equity alone, such creditors' lien would be protected in the decree, and which is a result not attainable at law, the answer is that in order to protect such conceivable rights it would be necessary to reverse altogether the doctrine of Vreeland *v.* Vreeland's Adm'r, because a right to make immediate payment to the widow is more dangerous to the enforcement of such liens than a promise to pay such moneys at a future time can be, as the former act is at once decisive and yields no time to the creditor for self-protection. But it would be to overstate the hazard of the situation to predicate the existence of any uncommon risk to equitable claimant; i , , funds by reason of making them collectible

at law after a promise by the representative to pay them, for creditors would stand, with respect to such transactions, precisely where they usually do when funds in which they set up some equitable right are about to be paid to their legal recipient. In such instances the door of chancery is open to all persons who wish to assert their equitable claim to any part of the separate estate of the married woman; and in this case, if any such claim should exist, the creditor entitled to enforce it would be constrained to seek, of his own motion, that forum, for if this court should now dismiss this action and bid this plaintiff to seek her remedy from the Chancellor, the supposed creditor in question would not be a necessary party to such a suit.

My conclusion is that the special promise to pay the moneys in trust, laid in these defendants in the manner stated, forms a legal basis for the present suit, and that the plea should be struck out.

It should also be observed that the plea, which is to the jurisdiction of the Circuit Court, is bad likewise on the ground that it covers the whole declaration, which contains an account stated in the usual form.

Let the Circuit Court be advised in conformity with the views above expressed.